UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| | ) | Case No. 1:08-CR-42 |
| v. | ) | *Collier / Lee* |
| | ) | |
| EDWARD CHAPMAN, IV | ) | |

## REPORT AND RECOMMENDATION

**I.   Introduction**

Defendant Edward Chapman, IV filed a motion to suppress all of the evidence seized by law enforcement during the September 12, 2007 search of his home [Doc. 12]. The motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) [Doc. 13]. The Government filed a response in opposition to the motion [Doc. 14]. An evidentiary hearing on the motion was held October 1, 2008. The parties filed memoranda, including post-hearing memoranda, addressing the issues raised in the motion and hearing [Doc.16, 18, 22 & 23]. For the reasons stated herein, I **RECOMMEND** that Defendant's motion be **DENIED**.

**II.   Evidence**

    **A.   Testimony**

An evidentiary hearing on Defendant's motion to suppress was held on October 1, 2008. The Government offered the testimony of Officer Michael Bolton ("Bolton") of the Chattanooga Police Department ("CPD"), the sole witness at the suppression hearing. Bolton, who is employed as a uniformed patrol officer in the crime suppression unit, testified as follows:

On August 28, 2007, the CPD received an anonymous tip concerning the sale of illegal narcotics by a black male named Edward at 1215 East 13th Street, which is Defendant's house. The

telephone call with the anonymous tipster was disconnected, but the CPD received a second anonymous tip about illegal drug activity at 1215 East 13th Street later that same day. Bolton assumed, but did not know, that the anonymous tipster was the same person in both telephone calls.[1] No other tips were received about activities at the residence.

Based upon the anonymous tip, Bolton and another CPD officer, Sargent Todd Royval ("Royval"), went to Defendant's residence at approximately 1:00 p.m. on September 12, 2007 to conduct a "knock and talk." Between August 28 and September 12, 2007, Bolton did not engage in any surveillance or investigation to corroborate the anonymous tip concerning drug sales at Defendant's residence and he was unaware of any action to corroborate the information by any other officer. No explanation was given for the delay in investigating the tips of August 28, 2007.

Bolton knocked on the front door of Defendant's residence – an individual unit of a duplex with an individual porch – to see if he could talk to an occupant about the tip. Bolton was in uniform and Defendant answered the door when he knocked. Bolton asked Defendant if he was Kenthearl Macon ("Macon"), and Defendant replied "no." Bolton asked Defendant if he was Macon in order to break the ice. Bolton mentioned Macon because he had previously arrested Macon at that same address for drug trafficking. Bolton stepped back from the door and asked Defendant to come out on the porch. Bolton had to request that Defendant come out onto the porch about three times before Defendant came out.

Defendant's home had both a front door and a barred security door.[2] When Defendant came

---

[1] A written report of the tips was admitted at the hearing as Government Exhibit 2.

[2] A photograph of a portion of the security door was admitted at the hearing as Government Exhibit 1.

out, he squeezed out the front door, turned and shut the door, and then locked it or, at least, appeared to lock it. Bolton asked Defendant if he knew Macon and was surprised when Defendant stated he did. Bolton told Defendant the CPD had received complaints about drug activity at his home. In the discussion, Defendant told Bolton he had previously been convicted of a felony involving crack cocaine. Bolton got personal information, such as date of birth, from Defendant. At this point, Bolton considered his encounter with Defendant to be a consensual encounter (a knock and talk) and Defendant was free to leave.

Bolton asked Defendant for consent to search his home and Defendant refused consent to search his home. Bolton then asked for consent to search Defendant's person and Defendant consented to the search of his person. In the consensual search of Defendant's person, Bolton found $800 in small bills. During the search, Bolton, who is trained to recognized the distinctive odor of marijuana, detected the odor of burnt marijuana on Defendant's person. When Bolton told Defendant he detected the odor of marijuana, Defendant responded that he had smoked marijuana earlier in the day.

Bolton then requested a canine unit and also contacted the CPD to determine if there were any outstanding warrants for Defendant's arrest. Initially, Bolton was advised by dispatch that there were two outstanding warrants for Defendant's arrest for a probation violation. Upon learning of the warrants, Bolton detained Defendant and had him move off of the porch and into the yard, but did not arrest him, pending verification of the outstanding warrants. Bolton did not arrest Defendant at that time because, although he had been advised there were outstanding warrants for Defendant's arrest, those warrants still had to be validated. The process of verifying the outstanding warrants takes between 15 minutes and one hour because part of the process is computerized and part of it

3

Case 1:08-cr-00042-CLC-SKL   Document 24   Filed 11/24/08   Page 3 of 20   PageID #: 92

requires an officer at the jail to manually check the files in the basement of the jail. Some time later, Bolton was told the warrants for Defendant's arrest could not be verified. He does not recall how long the verification process took, but, to the best of his recollection, it took at least 15 to 20 minutes. If the warrants had been verified, Bolton would have arrested Defendant. Because the warrants were not verified, he did not arrest Defendant, but Bolton continued to detain Defendant pending the canine unit's arrival based upon Defendant's odor of marijuana.

As noted, Bolton contacted a CPD canine handler, Officer Marty Penney ("Penney"), and asked him to deploy his drug detection dog, Blade, at Defendant's residence. Bolton thought he had enough probable cause for a warrant for the search of Defendant's residence without the deployment of a canine. However, while Bolton can recognize the distinctive odor of marijuana based upon his law enforcement experience, he asked for the canine unit because Blade's ability to detect drug odors is better than Bolton's ability to do so and Blade's ability is "documented."

When Penney and Blade arrived at the residence at 1:48 p.m., Penney walked Blade around a vehicle parked in the driveway of Defendant's home. Blade did not alert on the vehicle. Officer Penney then walked Blade around the front porch of Defendant's residence and Penney told Bolton that Blade twice alerted on the lower right side of the door to Defendant's home.[3] Penney told Bolton that Blade is certified by the USPCA and has a 95% "efficiency" rating.

At that point, Bolton left to secure a search warrant for the residence. Penney and Royval remained outside Defendant's residence to secure the location. Bolton drafted the affidavit in support of the search warrant and obtained a warrant for the search of Defendant's home. A copy

---

[3] Upon searching the residence, about a pound of marijuana was found hanging on the inside doorknob of the door where Blade alerted.

of the affidavit and the search warrant are attached to Defendant's motion [Doc. 12-2 at 5-7]. It took Bolton approximately three hours to draft the affidavit and obtain the warrant. The warrant indicates it was signed at 4:07 p.m. on September 12, 2007 [*id.* at 7].

Bolton helped with the execution of the search warrant and believed the warrant was valid and based on probable cause. He also believed he had probable cause for the search warrant prior to the dog sniff on Defendant's front porch.

The testimony of Bolton was not controverted by the evidence nor was his credibility impeached. Therefore, I **FIND** the uncontroverted testimony of Bolton and the exhibits introduced at the hearing provide an accurate description of the events at issue and constitutes the facts of this matter as stated herein.

  **B. Affidavit Supporting the Warrant**

Bolton's affidavit in support of the search warrant [Doc. 14-2] recites the following information:

  1. Bolton's 5.5 years of experience in law enforcement, including his experience investigating marijuana-related matters on over 100 occasions.

  2. The particular place to be searched, referred to as the "target location," described as an individual unit of a duplex with an individual porch.

  3. The arrival of Bolton at Defendant's residence to "follow up on reports that the target location was a drug house with significant traffic." Defendant's admission he knew Macon.

  4. Defendant's actions in coming to the security door, initially not coming out of the residence, but eventually squeezing "through as small an opening as he could make with the security door and the doorjamb," then closing "both the interior door and the security door," and starting to

5

lock the doors.

     5. The consensual search of Defendant's person, resulting in the seizure of $800.

     6. The odor of burnt marijuana emanating from Defendant's person and Defendant's admission he used marijuana earlier that day.

     7. The request for a canine unit and then a dispatch report of outstanding warrants on Defendant. The detention of Defendant pending confirmation of the warrants, which subsequently were not confirmed resulting in the "release[]" of Defendant from detention.

     8. The arrival of Penney and Blade, the training of the canine unit, the certification of Blade, and Blade's "success rate" of at least 95 %.

     9. Blade's alert to the odor of illegal narcotics at the door of Defendant's residence.

     10. Defendant's "local criminal history," including four convictions for simple marijuana possession and two felony convictions for attempted possession of cocaine for resale. Macon's "local criminal history," including two misdemeanor convictions for simple possession, one felony conviction for felony possession of marijuana, and three felony convictions for possession of cocaine for resale.

**III.  Analysis**

Defendant does not contest that the warrant is supported by probable cause if the information about Blade's alert is considered as part of the probable cause determination. Defendant argues, however, that the information about Blade's alert should be excluded from the probable cause determination, because Blade's alert at the front door was the result of a search in violation of the Fourth Amendment. Defendant contends that without the information about Blade's alert, there is insufficient probable cause for the issuance of the search warrant. Defendant does not contest

6

Blade's reliability or the veracity of the affidavit supporting the warrant.

The Government argues the sniff was not a search in violation of the Fourth Amendment but that even if it was, the warrant is supported by probable cause with or without the dog sniff/alert information. Alternatively, the Government argues the good faith exception would apply even if the warrant lacked probable cause without the dog sniff/alert information.

**A.     Standards**

The Fourth Amendment to the United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV.

The Fourth Amendment proscribes only unreasonable searches and seizures. *Scott v. United States*, 436 U.S. 128, 137 (1978); *United States v. Bishop*, 338 F.3d 623, 625 (6th Cir. 2003). "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). While the proponent of a motion to suppress generally bears the burden of demonstrating his or her Fourth Amendment rights were violated by a challenged seizure or search, *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978), it is the government's burden to demonstrate a particular seizure was based on probable cause. *United States v. Baldwin*, 114 F. App'x 675, 681 (6th Cir. 2004).

"The Supreme Court has defined 'probable cause' as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in

7

Case 1:08-cr-00042-CLC-SKL   Document 24   Filed 11/24/08   Page 7 of 20   PageID #: 96

believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). As held by the Supreme Court, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. *Illinois v. Gates*, 462 U.S. 213, 244 n.13 (1983). The Supreme Court has also held the probable cause standard is a practical, nontechnical conception dealing with the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause is a fluid concept turning on the assessment of probabilities in particular factual contexts, not readily reduced to a neat set of legal rules. *Id.* at 370-71. While the substance of probable cause is a reasonable ground for belief of guilt, probable cause must be particularized with respect to the place to be searched. *See id.* (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

The validity of a warrant for the search of a residence must stand or fall solely on the information provided within the four corners of the affidavit. *See United States v. Smith*, 182 F.3d 473, 480 n.2 (6th Cir. 1999); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996); *United States v. Hatcher*, 473 F.2d 321, 323 (6th Cir. 1973). The warrant should be upheld "as long as the magistrate had a 'substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . . .'" *Smith*, 182 F.3d at 477 (alteration and omissions in original) (quoting *Gates*, 462 U.S. at 236).

### B.      Probable Cause

The validly of the warrant on its face is not in dispute. The Defendant concedes the warrant is supported by probable cause if the information about the dog sniff and alert is considered in the

8

probable cause determination.

   C.   **Dog Sniff**

Turning to the issue of the dog sniff, it is well established that a positive indication by a properly trained dog is sufficient to establish probable cause for the presence of a controlled substance. *United States v. Diaz*, 25 F.3d 392, 394-95 (6th Cir. 1994). For a positive dog reaction to support a determination of probable cause, the training and reliability of the dog must be established. *Id.* at 394. After it is shown that a drug-detection dog is certified, all other evidence relating to accuracy goes only to the credibility of the testimony, not to the dog's qualifications. *United States v. Boxley*, 373 F.3d 759, 762 (6th Cir. 2004). Defendant does not contest Blade's training, certification or reliability. Instead, Defendant argues the sniff of the outside of the front door of his residence was a warrantless search in violation of the Fourth Amendment.

Defendant argues the sanctity of the home prevents law enforcement from conducting a dog sniff of a residence under the reasoning of cases such as *United States v. Silverman*, 365 U.S. 505 (1961) (warrantless use of "spike mike" to overhear conversations in home via heating duct is search in violation of the Fourth Amendment); *Kyllo v. United States*, 533 U.S. 27, 37-38 (2001) (warrantless use of thermal imaging of home is a search in violation of the Fourth Amendment); *and United States v. Thomas*, 757 F.2d 1359, 1366-67 (2nd Cir.) (warrantless use of drug-sniffing dog at front door of private apartment is search in violation of Fourth Amendment), *cert. denied*, 474 U.S. 819 (1985). In opposition, the Government relies on cases which hold a dog sniff is not a search under the Fourth Amendment, such as *United States v. Place*, 462 U.S. 696, 706-07 (1983) (dog sniff held not to be a search under the Fourth Amendment); *United States v. Jacobson*, 466 U.S. 109, 123-24 (1984) (same); and *United States v. Berry*, 90 F.3d 148 (6th Cir. 1996) (same).

9

Addressing the topic, the United States Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held:

> Just as the sniffing of contraband by trained canines does not constitute an unlawful search, neither does the viewing by humans of contraband in plain sight amount to an unlawful search. As long as the observant person or the sniffing canine are legally present at the residence when their respective senses are aroused by obviously incriminating evidence, a search within the meaning of the Fourth Amendment has not occurred. In addition, just as contraband in plain view may be seized if legally accessed it may also provide probable cause to obtain a search warrant, so, too, "a positive reaction by a properly trained narcotics dog can establish probable cause for the presence of controlled substances."

*United States v. Reed*, 141 F.3d 644, 649 (6th Cir. 1988) (quoting *Berry*, 90 F.3d at 153). *See also United States v. Cook*, No. 89-5947, 1990 WL 70703 (6th Cir. May 29, 1990) (per curiam) (holding there was no reasonable expectation of privacy in the area outside a rented storage facility and the warrantless dog sniff does not violate the Fourth Amendment because the dog was lawfully at the public rental facility).

The Sixth Circuit has rejected Defendant's argument and the holding in *Thomas*, *supra*, stating:

> At least two circuits have rejected the *Thomas* court's holding because it conflicts with the Supreme Court's determination that "[n]o legitimate expectation of privacy is impinged by governmental conduct that can 'reveal nothing about noncontraband items.'" *United States v. Colyer*, 878 F.2d 469, 475 (D.C.Cir.1989) (quoting *Jacobsen*, 466 U.S. at 124 n. 24, 104 S.Ct. at 1662 n. 24); *see United States v. Lingenfelter*, 997 F.2d 632, 638 (9th Cir.1993) (quoting *Colyer*, 878 F.2d at 475). Additionally, this circuit has criticized *Thomas* for rejecting the notion that a canine sniff is not a search within the meaning of the Fourth Amendment no matter where the sniff takes place. *See United States v. Cook*, No. 89-5947, 1990 WL 70703, at * 3-5 (6th Cir. May 29, 1990) (Guy, J., concurring). We now take the opportunity to clarify that a canine sniff is not a search

> within the meaning of the Fourth Amendment. Of course, the canine team must lawfully be present at the location where the sniff occurs. *See Diaz*, 25 F.3d at 397.
>
> Here, the canine team was lawfully present in Reed's flat, either due to the pursuit of a burglar, or Reed's consent. Any contraband seen by Sweat, or sniffed by Cheddy, therefore, fell within the "plain-view" doctrine or the "canine-sniff" rule.

*Reed*, 141 F.3d at 650.[4] *See also United States v. Curtis*, No. 1:03-CR-73, 2003 WL 21949131, * 3 (E.D. Tenn. June 27, 2003) (citing *Reed* for the proposition that a canine sniff is not a search and does not activate Fourth Amendment protections).

Also contrary to Plaintiff's position, the Supreme Court's holding in *Place* – that a canine sniff is not an unlawful warrantless search – did not turn on the location of the canine sniff. *Place, supra* at 707. Instead, it was the holding that a canine sniff detects only contraband and that there was no legitimate expectation of privacy in contraband that was central to *Place* and its progeny. Thus, the heightened expectation of privacy that exists with respect to a home is irrelevant under the rationale of *Place*, because whether or not a heightened expectation of privacy exists, a canine sniff reveals only a reasonable expectation of evidence of contraband. *Id.*; *see also Illinois v. Caballes*, 543 U.S. 405, 409-10 (2005) (quoting *Kyllo*, 533 U.S. at 38). Unlike the use of a thermal imaging device or a "spike mike," which may detect lawful activity in a residence, the use of a drug-detection dog will only reveal the existence of the odor of contraband.

Thus, the relevant inquiry in the Sixth Circuit is whether the canine was legally present at the

---

[4] In *United States v. Broadway*, __F. Supp. 2d __, 2008 WL 4468268 (D. Colo. October 2, 2008), the district court provides a detailed analysis of the numerous appellate courts, including the Sixth Circuit, that have rejected the *Thomas* decision concluding a dog sniff, even outside a residence, does not constitute a search of the interior of the residence for which a warrant is required under the Fourth Amendment.

11

time of the sniff – not whether the sniff was a search. In other words, the central issue here is whether the canine unit was lawfully at the front door of Defendant's residence when Blade alerted to the odor of contraband.

### D. Lawfully at Residence

The parties did not focus their arguments on whether the canine unit was lawfully at the residence. However, Defendant argued the front porch of Defendant's home was a non-public area that was within the curtilage of Defendant's home citing *United States v. Dunn*, 480 U.S. 294, 301 (1987) [Doc. 16 at 2-3]. Rather than address the curtilage issue, the Government contended the warrant is supported by probable cause with or without the dog sniff [*see e.g.*, Doc 23]. Thus, it appears the Government concedes the front porch is part of the curtilage of Defendant's home.[5]

The Sixth Circuit has held the Fourth Amendment does not absolutely bar all government encroachment upon curtilage. *Widgren v. Maple Grove Township*, 429 F.3d 575, 582 (6th Cir. 2005) (citing *California v. Ciraolo,* 476 U.S. 207, 213(1986)). While the Fourth Amendment clearly protects a person's abode from unfettered access by the police, law enforcement is not, in all circumstances, prohibited from entering onto the curtilage and walking up to a person's door. *See e.g., United States v. Smith*, 783 F.2d 648, 651 (6th Cir. 1986); *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005), *cert. denied*, 127 S.Ct. 87 (2006); *United States v. Chambers*, 395 F.3d 563, 568 n. 2 (6th Cir. 2005). "The Supreme Court has on a number of occasions suggested that there can be no reasonable expectation of privacy in what is exposed to the public." *Rice v. Gercar*, Nos.

---

[5] The Supreme Court has "described the curtilage of a dwelling as 'the area to which extends the intimate activity associated with the "sanctity of a man's home and the privacies of life."'" *Dow Chemical Co. v. United States*, 476 U.S. 227, 236 (1986) (quoting *Oliver v. United States*, 466 U.S. 170, 180 (1984) (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

Case 1:08-cr-00042-CLC-SKL   Document 24   Filed 11/24/08   Page 12 of 20   PageID #: 101

9503418, 95-3419, 1996 WL 67907, * 4 (6th Cir. Feb. 15,1996) (citing *California v. Greenwood*, 486 U.S. 35, 39-40 (1988); *California v. Ciraolo*, 476 U.S. 207, 213-14 (1986); *Katz v. United States*, 389 U.S. 347, 351 (1967)). "Absent a legitimate expectation of privacy, there is no 'search' subject to the warrant clause of the Fourth Amendment." *Id.* (citing *Illinois v. Andreas*, 463 U.S. 765, 771 (1983)).

Generally, police officers "may enter the curtilage in order to approach the home without implicating the constraints of the Fourth Amendment." *Edens v. Kennedy*, 112 F. App'x. 870, 875 (4th Cir. 2004). As the Fourth Circuit held in *Edens*:

> if the owner of a home encloses the curtilage with a fence, locks the gate, and posts "No Trespassing" signs, the effect for Fourth Amendment purposes is to extend the walls of the home to the edge of the curtilage. This is because the act of sealing the property creates an elevated expectation of privacy. *Cf. California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986) ("The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " (quoting *Katz v. United States*, 389 U.S. 347, 360, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring))); *Alvarez*, 147 F.3d at 357 (discussing reasonable expectations of privacy with respect to curtilage).
>
> In the absence of a fence with a locked gate, a homeowner is likely to receive visits from pollsters, door-to-door salespeople, and trick-or-treaters, among others. There is no constitutional basis for excluding police officers from this list of potential visitors. *See Rogers*, 249 F.3d at 289-90 ("[P]olice officers do not need a warrant to do what any private citizen may legitimately do-approach a home to speak to the inhabitants."). Nevertheless, the homeowner can reasonably expect all such visits to cease when he has manifested his intent to exclude strangers by sealing the property around his home and posting "No Trespassing" signs.

*Id.* "[A]nyone may 'openly and peaceably knock [on an individual's door] with the honest intent of asking questions of the occupant thereof – whether the questioner be a pollster, a salesman, or an

13

officer of the law.'" *United States v. Gonzales-Barrera*, 288 F. Supp. 2d 1041, 1047 (D.Ariz. 2003) (quoting *United States v. Hammett*, 236 F.3d 1054, 1059 (9th Cir. 2001) (quoting *Davis v. United States*, 327 F.2d 301, 303 (9th Cir.1964)).

In *United States v. Larson*, 63 F. App'x 416 (10th Cir. 2003), a police detective received a tip that a significant participant in the drug world was located in a particular building in Salt Lake City. *Id.* at 419. The police detective requested that other uniformed police officers assist him in conducting a "knock and talk" at the building. *Id.* After the district court denied defendant's motion to suppress, he appealed to the Tenth Circuit raising a number of issues, including: "(1) the front part of the building was part of the curtilage and the officers were restricted from invading it without a warrant [and] (2) the officers 'violated the sanctity of the home' and . . . seized the building" when they remained on the porch and continued to knock after being told the person they sought was not there. *Id.* at 423. The Tenth Circuit rejected the defendant's contentions the front porch of the building was part of the building's curtilage for Fourth Amendment purposes stating:

> Contrary to [defendant's] assertions, we conclude the front porch did not constitute part of the building's curtilage. More specifically, neither the presence of the chain-link fence, through which the officers could see, nor the fact that the front door window had been painted was sufficient to create any reasonable expectation of privacy with regard to the front porch area. *E.g., United States v. Santana*, 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (concluding defendant who was standing in doorway of her house was in a "public place" for purposes of Fourth Amendment); *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir.1982) (concluding officer who photographed tire tracks around front porch of a rural home did not invade the home's curtilage). The officers' entry onto the porch . . . did not violate [defendant's] Fourth Amendment rights.

*Id.* at 424. The Tenth Circuit also rejected defendant's assertion the police seized the building within the meaning of the Fourth Amendment when they remained on the porch and continued knocking

14

after being told the person they sought was not inside.

Similarly, in *United States v. Lakoskey*, 462 F.3d 965 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 1388 (2007), the Eighth Circuit rejected the defendant's arguments that he had a reasonable expectation in his front door area and the walkway leading to it and that the police violated his Fourth Amendment rights by remaining in his front door area after he asked them to leave, stating:

> "The absence of a closed or blocked gate in this country creates an invitation to the public that a person can lawfully enter along the driveway during daylight hours to contact the occupants for a lawful request and if the request is refused to leave by the same way." *United States v. Ventling*, 678 F.2d 63, 66 (8th Cir.1982). In that case, we held that the driveway is not "protected curtilage." *Id.* "[A] driveway and portion of the yard immediately adjacent to the front door of the residence can hardly be considered out of public view." *Id.* Thus, we will not extend Lakoskey's expectation of privacy to his driveway, walkway or front door area. *Id.* Moreover, under the Fourth Amendment, the question is not whether the officers were trespassing, but whether Thomas had a reasonable expectation of privacy. *See id.* ("The standard for determining when the search of an area surrounding a residence violates fourth amendment guarantees no longer depends on outmoded property concepts, but whether the defendant has a legitimate expectation of privacy in that area."). Consequently, the officers were lawfully allowed to approach Lakoskey's front door and contact him for investigative purposes.

*Id.* at 973.

In *United States v. Miser*, No. 2:08-CR-10, 2008 WL 3540059 (E.D. Tenn. Aug. 11, 2008), an anonymous tipster approached a police officer and stated the defendant and another man were living in a trailer in a campground, both men were wanted, and there were sizeable quantities of illegal drugs in the trailer. *Id.* The police officer, accompanied by another officer, approached the front porch of the trailer, where defendant was standing on the porch watching them. *Id.* The officers asked defendant for his name and identification. *Id.* While the officers were waiting for a

15

response from their radio dispatcher to determine if defendant was wanted, they asked defendant if the other individual they had been told was present at the trailer was there. *Id.* The defendant answered in the negative and told one of the officers to come in and look for himself. *Id.* As the defendant opened the door, a strong odor of marijuana came out of the trailer and, in response to the officer's questions, the defendant admitted he had just gotten through smoking marijuana. *Id.* At that point, the officers entered the trailer. In denying the defendant's motion to suppress, this Court stated:

> In this regard, it is noted that the officers had the right to walk upon defendant's porch without implicating the Fourth Amendment. Even though the front porch of a dwelling arguably is within the curtilage and therefore subject to the protection of the Fourth Amendment, there was no "search" when the officers stepped onto the porch. They went there, not to search the porch, but only to converse with defendant. *See, United States v. Correa*, 1804309 (N.D.Fla.2008), and *Davis v. United States*, 327 F.2d 301, 303 (9th Cir.1914). Once upon the porch, the officers noted the strong odor of burning marijuana, which ultimately justified their entry into the dwelling on the basis of exigent circumstances.

*Id.* at * 4.

The only evidence presented during the hearing regarding the front porch was that it was part of the entranceway to the Defendant's house. There was no evidence the porch was barred in any way or posted as a no trespassing area to prevent visitors from using it to approach the front door. There was no evidence Defendant ever objected to the officers' presence on the porch, although he clearly refused consent into his home. Under the evidence presented and arguments made, it cannot be said that the canine unit was on the front porch in violation of the Fourth Amendment merely

because the front porch is within the curtilage of the house.[6] Thus, I **CONCLUDE** the canine unit was lawfully present when the sniff at Defendant's front door occurred.

E.    Probable Cause Without Dog Sniff and Alert

Even assuming *arguendo* the canine unit was not lawfully on the front porch under the circumstances at issue, the affidavit supporting the search warrant contains evidence, apart from the dog sniff, that would support a finding of probable cause. The affidavit sets forth the arrival of Bolton at Defendant's residence to "follow up on reports that the target location was a drug house with significant traffic" and Defendant's admission he knew Macon. It describes Defendant's actions in coming to the security door, initially not coming out of the residence, but eventually squeezing "through as small an opening as he could make with the security door and the doorjamb," then closing "both the interior door and the security door," and starting to lock the doors. It describes the consensual search of Defendant's person, resulting in the seizure of $800, the odor of burnt marijuana emanating from Defendant's person, and Defendant's admission he used marijuana earlier that day. It also describes Defendant's criminal history, including four convictions for simple

---

[6] Defendant's brief also alleges the "knock and talk" became a constructive entry into the residence because Defendant felt compelled to exit his home to talk to law enforcement [Doc. 12], but he offered no evidence to support this argument other than Bolton's three requests for Defendant to come out and speak with him. This is insufficient to constitute a constructive entry. A consensual encounter between police and a defendant at the doorstep "may evolve into a 'constructive entry' when the police, while not entering the house, deploy overbearing tactics that essentially force the individual out of the home." *United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005). Coercive police conduct which creates a "constructive entry" must be such a show of authority that the defendant "reasonably believed he had no choice but to comply." *Id.* ( quoting *United States v. Saari*, 272 F.3d 804, 809 (6th Cir.2001). The hallmarks of coercive conduct which creates a "constructive entry" are "(1) drawn weapons; (2) raised voices; (3) coercive demands; or (4) a large number of officers in plain sight." *United States v. Grayer*, 232 F. App'x. 446, 450 (6th Cir. 2007) (citing *Saari*, 272 F.3d at 808-09). Such hallmarks of coercive conduct are conspicuously absent here.

marijuana possession and two felony convictions for attempted possession of cocaine for resale.

Considering the totality of the circumstances set out in the four corners of the affidavit in the commonsense manner required, and even if information of the dog sniff and alert is excluded, I **FIND** the affidavit established a fair probability evidence of a crime would be found in the location sought to be searched, Defendant's residence. Therefore, I **CONCLUDE** the United States has met its burden of establishing probable cause for the issuance of the warrant to search Defendant's residence even if information about the dog sniff is excised from the affidavit.

### F. Good-Faith Exception

Although I have found the search warrant is valid for the reasons set forth herein, in the interest of a complete report and recommendation I will also address whether the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984), would apply given that reasonable minds can differ on the issue of probable cause. As held many times, excluding all evidence procured in violation of the Fourth Amendment would "impede unacceptably the truth finding function of judge and jury." *See e.g., Leon*, 468 U.S. at 907 (quoting *United States v. Payner*, 447 U.S. 727, 734 (1980)). Consequently, evidence obtained with an invalid search warrant that officers executed in good faith is admissible. *Id.* at 897. Under this exception, "the relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether the probable cause existed in fact." *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir. 2005) (quoting *United States v. Carpenter*, 360 F.3d 591, 598 (6th Cir. 2004).

*Leon* enumerates four situations in which an officer's reliance on a search warrant could not be presumed reasonable:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false

> information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 914-23). The Sixth Circuit has analyzed the third and fourth situations as a single exception to *Leon's* rule of admissibility. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 645 (6th Cir. 2003).

Under the test of whether law enforcement officers reasonably believed the warrant was properly issued, not whether probable cause existed in fact, I **FIND** the affidavit states, at least, a sufficient basis to justify the officers' good faith reliance on the search warrant and it is not so lacking in factual detail or facially defective as to preclude application of the good faith exception. Defendant has provided no argument to the contrary. Consequently, I **FIND** the officers who conducted the search reasonably relied on the warrant's legitimacy and the *Leon* exception would apply even if the affidavit were found to be insufficient to establish probable cause.

## IV. Conclusion

For the reasons stated herein, I **RECOMMEND** that Defendant's motion [Doc. 12] be **DENIED**.[7]

                                                s/*Susan K. Lee*
                                                SUSAN K. LEE
                                                UNITED STATES MAGISTRATE JUDGE

---

[7] Any objections to this report and recommendation must be served and filed within ten days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).